UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Luis Polo, being duly sworn, do hereby depose and state the following:

1. I am a Border Patrol Agent with the United States Border Patrol and have been so employed since March 27, 2006. As a Border Patrol Agent, I have gained experience in conducting investigations related to the illegal entry of aliens into United States. I attended the Federal Law Enforcement Training Center at Artesia, New Mexico, where I received training for the purpose of accomplishing my Border Patrol duties, which includes training in immigration related law and matters. Furthermore, I also receive training on a continuing basis for the purpose of maintaining my proficiency pertaining to Border Patrol work.

2. My investigation reveals that, on or about Tuesday, December 17, 2024, **Katiusca Altagracia RAMIREZ** illegally entered the United States by boat, at or near "Combate Beach", Cabo Rojo, Puerto Rico and assaulted a federal officer or employee involving physical contact while in custody in a hospital. Therefore, this Affidavit is made in support of a Criminal Complaint against **RAMIREZ** based on violation of Title 8, *United States Code*, Section 1325 (a), entering the United States illegally; and Title 18, *United States Code*, Section 111, Assault on a federal officer or employee, involving physical contact.

3. I make this affidavit based on my own personal knowledge and on oral and written reports by other federal, state, and/or local law enforcement agents and officers that investigated this matter. This affidavit does not contain all the information derived from this investigation only that which is sufficient to demonstrate probable cause to believe that a crime has been committed.

1

## **PROBABLE CAUSE**

4. On or about Tuesday, December 17, 2024, at approximately 11:25 a.m., United States Border Patrol (USBP) Ramey Sector Dispatch received information from Supervisory Marine Interdiction Agent Piñeiro, from Customs & Border Protection (CBP) Air & Marine Office (AMO) & a phone call from Puerto Rico Police Department (PRPD) Marine Unit (FURA) Cabo Rojo informing about a Maritime Smuggling Event (MSE) that landed in Punta Aguila, Combate Beach, Cabo Rojo, Puerto Rico.

5. USBP, AMO & FURA responded to the area for support.

6. A yawl-type, blue in color vessel, with two outboard engines was found in the area of "Combate Beach", Cabo Rojo, Puerto Rico.

7. A total of twenty-three (23) Haitian National migrants were apprehended in the area.

8. USBP & AMO agents were able to locate & apprehend seven (07) additional subjects.

9. A total of thirty (30) subjects were apprehended at the time, and thirty (30) additional subjects absconded and were outstanding in the area.

10. At approximately 12:30p.m., AMO agents contacted USBP Radio Dispatch requesting Emergency Medical Services (EMS) for a pregnant female, requesting medical assistance.

11. Emergency System 911 was contacted, Montalvo, position 105 received the emergency assistance phone call, sending EMS to the area.

12. EMS arrived on scene in Cabo Rojo at approximately 12:59p.m.

13. All subjects were arrested and transported to Ramey Station in Aguadilla, Puerto Rico for further investigation, processing and subsequent removal proceedings.

14. Two subjects (one male & one female) were taken to the hospital Centro Medico in Mayaguez, Puerto Rico.

15. From the two subjects taken to the hospital, the female was later identified as **Katiusca Altagracia RAMIREZ**.

16. **Katiusca Altagracia RAMIREZ** requested medical assistance and to be taken to a hospital, to the arresting agents on the field claiming that she was pregnant and that she had back pain.

17. EMS transported **RAMIREZ** to Centro Medico Hospital in Mayaguez, Puerto Rico.

18. While in custody in the hospital, at approximately 08:16p.m., **RAMIREZ** punched in the face her custody agent Luis Rivera.

19. Supervisory Border Patrol Agent (SBPA) Edgardo Milan was notified by Border Patrol Agent Mathew Nevels who was also in the hospital in custody of the other injured male subject.

20. Later that night, **RAMIREZ** was released from the hospital and transported to Ramey Station for further investigation, processing and removal proceedings.

21. Upon arrival to the station, **RAMIREZ** fingerprints and picture were entered into different database systems showing prior immigration history and no prior criminal history.

22. As to **RAMIREZ's** immigration history:

    a) On April 23, 2024, **RAMIREZ** was encountered & intercepted at sea by

the United States Coast Guard while on her way to Puerto Rico. At the time **RAMIREZ** was repatriated back to the Dominican Republic by USCG.

b)  On May 20, 2024, **RAMIREZ** was encountered & intercepted at sea by USCG while on her way to Puerto Rico for a second time. At the time, **RAMIREZ** was again repatriated back to the Dominican Republic by USCG.

c)  On Tuesday, December 17, 2024, **RAMIREZ** on her third attempt to arrive to Puerto Rico, arrived to Combate Beach, Cabo Rojo, Puerto Rico.

23. BPAs interviewed **RAMIREZ** as to her citizenship & legal status in the United States.

24. **RAMIREZ** freely admitted to being a citizen and national of the Dominican Republic and that he was without valid immigration documents to enter, re-enter, to be in, or remain in the United States legally.

25. Border Patrol agents advised **RAMIREZ** of her right to legal representation and her right to speak with the Consul of her native country, the Dominican Republic, to which she declined.

26. **RAMIREZ** illegally entered the United States at a place other than a designated port of entry.

27. **RAMIREZ** assaulted a federal officer involving physical contact.

28. **RAMIREZ** lied to officers by making false statements of being pregnant to be taken to the hospital by false pretexts. An ultrasound/sonography examination conducted at the hospital revealed **RAMIREZ** was not pregnant.

29. **RAMIREZ** does not have any immigration documents allowing her to enter and/or to remain in the United States legally, to include but not limited, the lack of

express consent from the Attorney General of the United States, or his successor, the Secretary of the Department of Homeland Security, to reapply for admission into the United States. Furthermore, **RAMIREZ** was not inspected, admitted or paroled into the United States by an Officer of the Bureau of Customs and Border Protection.

30. **RAMIREZ** does not have any petitions pending with the Bureau of Citizenship & Immigration Services.

31. Based upon my training, experience, and participation in other investigations, and based on the facts revealed in this investigation, I believe that sufficient probable cause exists to demonstrate the commission of violations of federal law by the above-mentioned subject, to wit, a violation of Title 8, *United States Code*, Section 1325 (a), entering the United States illegally; and Title 18, *United States Code*, Section 111, Assault on a federal officer or employee, involving physical contact.

Luis Polo
Border Patrol Agent, United States Border Patrol

Sworn before me pursuant to FRCP 4.1 at 5:41 p.m. by telephone, this 19th day of December 2024.

Digitally signed by Hon. Giselle López-Soler

Honorable Giselle López-Soler
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO

5